**A. S. GEORGE et ux., Appellants,**

**v.**

**CITY OF FORT WORTH et al., Appellees.**

**No. 16966.**

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 15, 1968.

Rehearing Denied Dec. 20, 1968.

David Duke, Arlington, for appellants.

S. G. Johndroe, Jr., City Atty., Fort Worth, for appellee City of Fort Worth.

Brown, Day & Crowley, and George A. Crowley, Fort Worth, for appellee, Gerard W. Purcell Associates, Ltd.

OPINION

RENFRO, Justice.

A. S. George, joined by Florence George, his wife, sued Gerard W. Purcell Associates, Ltd., a corporation, and The City of Fort Worth for damages for personal injuries sustained by Mrs. George when she dropped or slipped off the edge of the bottom step of a stairway in a City owned building.

Will Rogers Coliseum, City owned, was under written lease to Purcell on the night in question.

For convenience we refer to Mrs. George as plaintiff.

Purcell sponsored a concert by Liberace on November 10, 1966. Plaintiff plead that she paid an admission fee, went to her seat and enjoyed the concert, and "at the conclusion of the concert, but during the Grand Finale, Mrs. George descended the stairs

in the upper part of the Coliseum in a careful and prudent manner. She negotiated all the steps without incident until she reached the bottom step where she was caused to fall."

She alleged the defendants were negligent, and such negligence was a proximate cause of her injuries in the following particulars: (1) in failing to maintain enough light on the bottom step on which plaintiff fell to properly illuminate such step, (2) in failing to properly design the bottom step on which plaintiff fell so that it did not blend in with the walkway area, (3) in failing to properly maintain the bottom step on which plaintiff fell so that it did not blend in with the walkway area and created an optical illusion, (4) in failing to warn plaintiff that the step on which she fell blended with the walkway area and created an optical illusion.

The City denied any negligence whatever, and plead five specific acts of contributory negligence on the part of plaintiff, and, in the alternative, unavoidable accident. The City also plead the lease contract between City and Purcell, alleging that under the terms thereof Purcell became bound to indemnify the City for any damages arising out of use of the Coliseum.

After considering defendants' motions for summary judgment based on the pleadings, motions, affidavits, admissions, and depositions on file, the court found an absence of a genuine issue of any material fact, granted defendants' motions for summary and entered judgment that plaintiff take nothing.

On appeal plaintiff contends she presented a controverted fact and therefore the court was in error in granting defendants' motions for summary judgment.

The City established without dispute that there were no cracks, defects or broken places on the step; there were no foreign objects or substances on the steps or on the landing in the vicinity of the steps.

Plaintiff relies on Morin Scott, d/b/a Tidelands Motor Inn v. James Liebman, 404 S.W.2d 288 (Tex.Sup., 1966), as upholding her contention that she had no knowledge that the step "blended" in with the walkway area and created an optical illusion.

Instead of isolating those portions of plaintiff's testimony which she says are favorable to her, we will summarize all of her deposition testimony.

Plaintiff was seventy-three years of age. In November, 1966, she went with her great-grandson to Will Rogers Coliseum to attend a Liberace concert. They went up some stairs to their seats in the balcony. She noticed nothing amiss when she ascended the stairway. During the finale she started out early to get out before the crowd. She used the stairway she had used to go up to her seat. Asked to describe the fall, she answered: "Well, to be real honest, I don't—it happened so fast, I don't know, but, you know, when you go down the stairs, you naturally look to see and everything looked clear. Of course, going up, it was lighted, you know, with the yellow stripes and going down, I thought, when the last step came, it looked even and I guess I stepped on that step and tipped because it threw me on my face * * *." She did not trip over anything. "I think I just, the step was, you know, it was all blended in with the platform there and I just stepped probably on the edge of it and just tipped * * *. There wasn't any light or anything there to show the difference." She noticed nothing unusual or peculiar about the step design. "There is no railing of any kind and I went on in because there was a few steps and, when I came down, why, I don't know, as I told you, I just don't know what happened. * * * I fell on the bottom step and I think that I just stepped probably on the edge of it, thinking it was all straight, because that's what it looked like, you know, I couldn't see." When she first entered the Coliseum there were overhead lights on, there was plenty of light. She knew when she started down the steps there was no hand rail. "Were you perhaps a little stiff after sitting for two or two and a

half hours?" Answer: "No, sir. * * * I just got up and I fell. That's all." Going up she could see the steps because they "are on the separation part * * * they are not on the top of the step and it looked just, you know, even with the platform. They were all the same color, dark."

D. Don Magness, Managing Director of the Will Rogers Memorial Center for the City, by affidavit in support of the motion for summary judgment, and by deposition, swore and testified: All the steps by the portals are the same. During a performance the steps are lighted by lights in the walk around which comes through the portals, and a certain amount of light "bleeds" back from the stage lighting. He sees that all lights in the Coliseum are re-globed prior to a show. There have never been any complaints from patrons concerning inadequacy of lighting. No one has ever fallen on the steps or stairways. He has never seen or heard of anyone stumbling on the steps, either before or after plaintiff's fall. The steps are raw concrete, dark gray. The face of the steps are painted yellow.

On the occasion of the Liberace concert more light was used than usual.

The overhead lights were on before the concert started, but turned off just prior to the start of the performance. The lights were turned on during intermission. The lights had not been turned on when plaintiff descended the steps. They are turned on *after* a performance. He has never received any complaints of the condition of the steps in the Coliseum.

Plaintiff did not file a controverting affidavit in reply to the Magness affidavit, and offered no contradiction to his deposition testimony, and showed no reason for not doing so.

In brief, and in consideration of all of plaintiff's testimony, the situation was as follows: plaintiff had attended concerts before. She knew that "house" lights or overhead lights are turned off during the actual performance on the stage. She knew that the lights are turned on immediately after the performance is concluded. With this knowledge she voluntarily descended the unlighted stairway in order to "get out before the crowd," and in her own words, "I just got up and I fell. That's all."

▮ The mere fact that plaintiff fell on the step did not establish negligence on the part of the defendants. Houston Nat. Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374 (1948); Yost v. Texas Christian University, 362 S.W.2d 338 (Tex.Civ.App., 1962, no writ hist.).

▮ In our opinion plaintiff's own testimony failed to raise any issue as to negligence on the part of defendants. She does not contend that she could procure and introduce any such evidence on a trial.

The City agreed that plaintiff and/or her attorney could take pictures of, examine, inspect and test the premises at any reasonable time.

If plaintiff took advantage of the agreement, she apparently found nothing which would aid her in establishing negligence against the defendants. No pictures, reports or documents were presented by her to the court at the hearing on the motion for summary judgment, and she does not contend the result of any pictures taken, test performed or examination made would be of benefit to her cause.

We affirm the trial court primarily upon the basis that there was no evidence, or, at the most, a mere scintilla of evidence of negligence on the part of defendants. In support of such holding we cite Acme Laundry Co. v. Ford, 284 S.W.2d 745 (Tex. Civ.App., 1955, ref., n. r. e.); Raeburn v. City of Houston, 346 S.W.2d 488 (Tex.Civ. App., 1961, ref., n. r. e.); Crawford v. Given Bros., 318 S.W.2d 123 (Tex.Civ.App., 1958, ref., n. r. e.).

Further reason for affirmance is found in Murphy v. City of Beaumont, 420 S.W.2d

459 (Tex.Civ.App., 1967, ref., n. r. e.), a case remarkably similar factually to the instant case, and Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup., 1963), wherein the court held: "* * * if there are open and obvious dangers of which the invitees know, or of which they are charged with knowledge, then the occupier owes them 'no duty' to warn or to protect the invitees. This is so, the cases say, because there is 'no duty' to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof."

 That the stairway was not lighted was a fact "so open and obvious" to plaintiff that we hold she was charged as a matter of law with knowledge and appreciation of the danger of "beating" the crowd by entering and descending the unlighted stairway. Robert E. McKee, General Contractor, Inc., v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954); Delhi-Taylor Oil Corp. v. Henry, 416 S.W.2d 390 (Tex.Sup., 1967); Lowe Chemical Co. v. Greenwood, 433 S.W.2d 695 (Tex.Sup.1968); Wesson v. Gillespie, 382 S.W.2d 921 (Tex.Sup., 1964).

Defendants would have been entitled to an instructed verdict had the case, as reflected in the record, been tried before a jury. The court, therefore, did not err in granting summary judgment for defendants. Cline v. Texas Hotel, 392 S.W.2d 594 (Tex.Civ.App., 1965, no writ hist.).

The judgment for the City of Fort Worth was proper for a third reason.

Purcell occupied the Coliseum on the date in question as a tenant under a written lease agreement with the City. It was agreed in the written lease that Purcell would provide ticket sellers, ticket takers, ushers, floor managers, stage crews, electricians, technicians, and all help necessary.

The lessee expressly agreed to take the premises "as he finds them."

We find nothing in the lease agreement, or in the record before the trial court, which would have the effect of taking the arrangement between the City and Purcell out of the normal landlord and tenant relationship. The general rule then applies that "Where there is no agreement by the landlord to repair the demised premises and he is not guilty of any fraud or concealment by failing to disclose hidden defects of which he has knowledge, the tenant takes the risk of their safety and the landlord is not liable to him or to any other person entering under his title or by his invitation for injury caused by their unsafe condition." City of Fort Worth v. Barlow, 313 S.W.2d 906 (Tex.Civ.App., 1958, ref., n. r. e.); Morton v. Burton-Lingo Co., 136 Tex. 263, 150 S.W.2d 239 (1941).

All points of error are overruled.

Judgment affirmed.